## A95A0262. RIMES TRACTOR & EQUIPMENT, INC. v. AGRICREDIT ACCEPTANCE CORPORATION.
### (454 SE2d 564)

BLACKBURN, Judge.

This is an appeal from the trial court's grant of partial summary judgment in favor of appellee/plaintiff Agricredit Acceptance Corporation (AAC) in this breach of contract action.

Appellant/defendant Rimes Tractor & Equipment, Inc. (Rimes) is a retailer of construction and forest equipment. AAC is in the business of financing the purchase of agriculture and forestry equipment through the use of contract assignments. On April 16, 1990, Altamaha Timber, Inc. (Altamaha) entered into a retail installment contract and security agreement with Rimes for the purchase of a Barko-160 loader, and conveyed a security interest in the loader to Rimes as collateral. Altamaha made a cash down payment of $5,000 on the $35,000 purchase price of the loader and financed the remaining balance. On the same day, for good and valuable consideration, Rimes assigned its interest in the contract to AAC.

The assignment agreement executed by Rimes' president, Joseph Edward Rimes, specifically provided that "[i]n the event [Altamaha] defaults in the performance of any obligation under the Contract, AAC may reassign to [Rimes] and [Rimes] shall accept the Contract and possession of any equipment secured thereby which AAC may have repossessed and pay AAC a sum equal to the then due indebtedness. . . . The inability or election of AAC not to repossess equipment secured by the Contract shall not relieve [Rimes] from liability hereunder. Such indebtedness shall be immediately payable by [Rimes] to AAC in cash or by a note containing terms acceptable to AAC payable to AAC or its nominee." The assignment agreement did not indicate that the reassignment had to be in writing and did not place any time limits on reassignment. In his affidavit and in his deposition testimony, Joseph Rimes admitted that he executed the assignment agreement in issue to facilitate the sale of Altamaha's retail installment contract.

In June 1991, Altamaha defaulted under the terms of the retail installment contract and voluntarily returned the equipment to Rimes. In his affidavit, AAC's regional finance manager averred that on July 1, 1991, he contacted Joseph Rimes by telephone, and attempted to reassign the retail installment contract to Rimes by requesting that Rimes repurchase the contract by paying the outstanding indebtedness. Joseph Rimes refused to do so and repudiated the terms of the assignment agreement. Richard Garman, area finance manager for AAC, deposed that he also contacted Joseph Rimes concerning the reassignment agreement and requested that Rimes repurchase the contract. In a letter of July 31, 1991, Rimes' counsel further

disputed the terms of the assignment agreement. Consequently, this action ensued.

Rimes responded to the complaint and admitted that the retail contract was assigned to AAC, but denied that the assignment agreement provided for the reassignment of the contract. Rimes also asserted a counterclaim for repairs made upon the loader since it had been in its possession, and for reasonable fees for storage of the loader. Pursuant to the trial court's order, Rimes sold the equipment for $23,000, and paid the proceeds of the sale into the court's registry. The funds were later paid to AAC. After AAC moved the court for summary judgment in its favor, Rimes filed a cross-motion for summary judgment, asserting that AAC never attempted to reassign the contract.

In granting the motion for partial summary judgment in favor of AAC, the trial court concluded that under the assignment agreement, AAC could orally exercise its right to reassign the contract since the assignment agreement did not require that reassignment be made in writing or that reassignment occur within a certain time period. The court further concluded that counsel's July 31, 1991 letter repudiating the terms of the assignment agreement made a formal written reassignment futile.

"The construction of a contract is a question of law for the trial court. The cardinal rule of construction is to ascertain the intention of the parties. If that intention [is] clear, and it contravenes no rule of law, and sufficient words [are] used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." (Citations and punctuation omitted.) *Peterson v. First Clayton Bank &c. Co.*, 214 Ga. App. 94, 97 (447 SE2d 63) (1994). In the case at bar, the language in the assignment agreement clearly provides that AAC had an option to reassign the contract to Rimes in the event of the buyer's default, that Rimes had to accept said reassignment, and that Rimes had to pay to AAC a sum equal to the outstanding indebtedness due at that time. The evidence of record indisputably shows that AAC made such a reassignment, albeit orally, and Rimes, contrary to the agreement, refused to accept the reassignment. As the trial court correctly concluded, the assignment agreement does not provide that reassignment had to be in writing or that reassignment had to be effectuated within a certain period of time.

Rimes argues that AAC is estopped from exercising its rights under the contract because of its failure to do so when the contract initially went into default. However, Rimes did not raise this estoppel argument in its answer or in its motion for summary judgment, but raised it for the first time in its supplemental brief in support of its motion for summary judgment, over three months after the filing of the summary judgment motion. Estoppel is an affirmative defense

and must be set forth affirmatively in a responsive pleading or in a motion for summary judgment. See OCGA § 9-11-8; *Albany Oil Mill v. Sumter EMC*, 212 Ga. App. 242 (1) (441 SE2d 524) (1994). Accordingly, Rimes waived this defense by untimely asserting it in its supplemental brief. See *Sawyer v. C & S Nat. Bank*, 164 Ga. App. 177, 183 (296 SE2d 134) (1982). Moreover, the evidence of record does not support Rimes' assertions. *Albany Oil Mill*, supra; *Sawyer*, supra. In addition, Rimes' argument that AAC waived its right to reassign the contract by claiming an ownership interest in the loader after it was returned by the buyer is equally unsupported by the evidence of record. On the contrary, AAC had a valid security interest in the loader as assignee of the retail installment contract prior to its attempt to reassign the contract to Rimes.

Consequently, Rimes is liable to AAC under the clear and unambiguous terms of the assignment agreement, and the trial court did not err in granting partial summary judgment to AAC.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 7, 1995.

*Kris Knox*, for appellant.
*Thompson, O'Brien, Kemp & Nasuti, R. Michael Thompson, Joseph T. Brasher*, for appellee.