28872. WILDER v. THE STATE.

HALL, Justice.

State regulation of billiard rooms comes under constitutional attack in this appeal.

Wilder, accused of operating a billiard room on Sunday in violation of Code § 84-1610[1] (Ga. L. 1925, pp. 286, 288) demurred to the accusation on the ground that the statute violated the equal protection guaranties of the United States and Georgia Constitutions. His demurrer was overruled, and he appeals with a certificate of immediate review. He argues, first, that the above cited statute requiring that billiard rooms be closed at night and on Sunday is unconstitutional because under Code § 84-1616[2] (Ga. L. 1925, pp. 286, 290) certain categories of billiard rooms are exempted. The differing treatment accorded these operators is claimed not to be supported by a reasonable classification. Wilder's second equal

---

[1] "It shall be unlawful for any person, firm or corporation to operate a billiard room between the hours of 12 o'clock midnight and six o'clock a.m., or to permit any person to remain in such billiard room between said prohibited hours, except regular employees performing necessary labor on the premises. It shall be unlawful for any billiard room to operate billiard tables on Sunday."

[2] "The provisions of this Chapter shall not be construed to include billiard tables or billiard rooms

protection argument is that when Code § 84-1610 is compared to Code Ann. §§ 106-801 and 106-802 (Ga. L. 1949, pp. 1007, 1008) which allow the Sunday operation of motion picture theatres and athletic events, games and contests if the sponsor obtains a permit, again the legislature is found to have created an invidious classification without a rational relationship to the end sought to be achieved.

Wilder does not dispute that it has long been established in Georgia that the operation of public billiard rooms is a business which by its nature comes within the state's police power. *Shaver v. Martin,* 166 Ga. 424 (143 SE 402); *Beaty v. Richardson,* 164 Ga. 185 (138 SE 54). See also Annots., 20 ALR 1482; 29 ALR 41; 53 ALR 149; 72 ALR 1339. Billiard rooms as well as other enterprises may be prohibited from operating on Sunday because the legislature might reasonably have concluded that their operation was inconsistent with the establishment of a weekly day of rest, recreation, and tranquility. See McGowan v. Maryland, 366 U. S. 420 (81 SC 1101, 6 LE2d 393). See generally, Annot., 24 ALR2d 814, 825, § 7. Therefore, the legislative treatment of billiard rooms here considered does not exceed the state's power to regulate, unless the legislative classifications are determined to be invidious in that they do not have a rational relation to the object of the legislation. See Levy v. Louisiana, 391 U. S. 68 (88 SC 1509, 10 LE2d 436).

The validity of the state's classifications here does not depend upon their absolute correctness nor upon the absence of any under- or overinclusiveness in the categories drawn. Nor must we necessarily agree with the soundness of the distinction maintained by the statutory scheme. If the legislative purpose is legitimate and the classification drawn has some reasonable relation to furthering that purpose, the classification passes muster.

---

operated by private industrial concerns, Young Men's Christian Associations, religious orders, charitable institutions, state, county or city institutions, fraternal orders or bona fide clubs using such tables for members or employees only."

A classification, even though discriminatory, is not a violation of the equal protection clause of the Fourteenth Amendment if any state of facts reasonably may be conceived that would sustain it. McGowan v. Maryland, 366 U. S. 420, 426, supra; Safeway Stores v. Oklahoma Retail Grocers Assn., 360 U. S. 334 (79 SC 1196, 3 LE2d 1280). To the extent to which Wilder urges that perfect fairness and non-discrimination are required to sustain the legislature's classifications, he overestimates the stringency of the equal protection test as applied to state police power regulations governing economic matters.

No genuine question is raised here concerning the validity of the legislative purpose in regulating the operating hours of billiard rooms. Our question is whether the exclusion from the regulation of the entities specified in Code § 84-1616 is reasonably related to the accomplishment of the purpose. Our test is whether the legislature might within reason have concluded (regardless of whether such conclusion seems in our view right or wrong) that a state of facts exists upon which the line of discrimination it has drawn marks genuinely differing classes of billiards-playing. Wilder urges that the excluded entities comprise no class, because they had no common characteristic. We disagree, finding that Code § 84-1616, excluding from the statutory restrictions the designated entities "using such tables for members or employees only" draws a reasonable classification because use by members or employees constitutes use by persons who have a common associational tie with each other, or a community of interest and activity over and beyond their common desire to play at billiards. If the legislature has concluded—and it has—that the social evils to be feared from the operation of a commercial billiards parlor admitting all comers possessing the price of a game, are not to be feared from the playing at billiards of individuals who are all members or employees of a single, sponsoring entity, we are not prepared to say that such a conclusion is unreasonable; for the former may be thought to pose all the hazards of the typical pool hall whereas the latter may be thought to provide wholesome recreation among persons who will govern their behavior at billiards in recognition of their pre-

existing relationship to each other. This latter group, in effect, may be thought to be playing a "friendly game," and the legislature may reasonably conclude that during nights and on Sundays the public tranquility will best be served by allowing only such friendly games to proceed. This conclusion is also consistent with the principle that "the ordinance is not aimed at the game, but at the place." Murphy v. California, 225 U. S. 623, 629 (32 SC 697, 56 LE 1229, 41 LRA (NS) 153) quoted in *Shaver v. Martin,* 166 Ga. 424, 427, supra.

We conclude that no violation of state or federal guaranties of equal protection appears from the juxtaposition of Code §§ 84-1610 and 84-1616. Nothing in *McAllister v. State,* 220 Ga. 570 (140 SE2d 828), holding that a classification based upon the population of counties was not reasonably related to the purpose behind Sunday fishing laws, nor in *Simpson v. State,* 218 Ga. 337 (127 SE2d 907) holding that the exclusion of newspapers was not reasonably related to the purpose of regulations protecting the citizenry from obscenity, leads to a different conclusion.

Wilder's second argument, that the classification of Code § 84-1610 is unreasonable viewed in conjunction with Code Ann. §§ 106-801 and 106-802, allowing other Sunday amusements, is without merit. The mere fact that all these activities may be termed "amusements" does not mean that they must be treated equally. The legislature is free to discern, or to think that it discerns, differing degrees of social benefit inhering in various types of amusements. It may move to attack a harm where it is perceived, without any necessity for moving against it on other fronts where it may also be found. Williamson v. Lee Optical of Oklahoma, 348 U. S. 483, 489 (75 SC 461, 99 LE 563); United States v. Carolene Products Co., 304 U. S. 144, 151 (58 SC 778, 82 LE 1234); James-Dickinson &c. Mtg. Co. v. Harry, 273 U. S. 119, 125 (47 SC 308, 71 LE 569). As Justice Holmes said many years ago, "A classification is not to be pronounced arbitrary because it goes on practical grounds and attacks only those objects that exhibit or foster an evil on a large scale. It is not required to be mathematically precise and to embrace every case that theoretically is

capable of doing the same harm." Weaver v. Palmer Bros. Co., 270 U. S. 402, 416 (46 SC 320, 70 LE 654) (dissenting opinion).

"It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." Railway Express Agency v. New York, 336 U. S. 106, 110 (69 SC 463, 93 LE 533).

No constitutional infirmity necessarily inheres in a regulatory scheme just because certain games are prohibited on Sunday while others are not. See generally, Annot. 24 ALR2d 815, § 2. It is reasonable to prohibit Sunday play at public commercial billiard rooms, and that substantially ends our inquiry under this line of argument. The "underinclusiveness" of the statute, urged by Wilder, is a consideration appropriate to equal protection scrutiny of legislation adversely affecting fundamental personal freedoms; but it does not enter into our evaluation of this statute regulating billiard rooms.

The trial court correctly overruled Wilder's demurrer.

*Judgment affirmed. All the Justices concur.*

SUBMITTED MAY 3, 1974 — DECIDED JUNE 18, 1974.

*Cory, Del Bello & Dowling, Robert A. Del Bello,* for appellant.

*Hinson McAuliffe, Solicitor, Frank A. Bowers, James L. Webb,* for appellee.